UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ULTRIA, INC., <br><br> Plaintiff, <br><br> NEW YORK TIMES COMPANY, <br><br> Defendant. | Civil Action <br><br> **COMPLAINT** |

Plaintiff Ultria, Inc., ("Ultria") through its undersigned attorneys, Herold Law, P.A., by way of Complaint against Defendant New York Times Company (the "Times"), hereby alleges as follows:

### NATURE OF THE ACTION

1. This is an action by Ultria to recover losses incurred as a result of the Defendants' breach of their contractual obligations under the parties' November 22, 2019 Master Agreement ("Master Agreement"). Pursuant to the Master Agreement, Ultria granted to the Times a non-exclusive, non-transferrable license to use Ultria's "software" as a service or "Saas" software ("Saas" or the "Software") in connection with its business operations.

2. Pursuant to the Master Agreement, Ultria was obligated to and did perform various services related to the operation and management of the Software and collaborative software implementation.

3. While Ultria completed the Software implementation and all other services it was obligated to perform under the Master Agreement, the Times breached on its contractual obligations by

1

refusing and failing to pay annual subscription fees and other service-related payments for a minimum three-year subscription term.

**PARTIES**

4.   Plaintiff Ultria, Inc. is a company having a principal place of business at 103 Carnegie Center, Suite 321, Princeton, New Jersey 08540.  Ultria is a developer of business accounting and procurement software.

5.   Defendant New York Times Company is a company having a principal place of business at 620 Eighth Avenue, New York, New York 10081.

6.   Ultria is the licensor and the Times, the licensee under the Master Agreement.

**JURISDICTION AND VENUE**

7.   This Court has subject matter jurisdiction under 28 U.S.C. §1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of costs and interest.

8.   This Court has personal jurisdiction over the parties because they consented to the jurisdiction of this Court in the forum selection and choice of law provisions of the Master Agreement.  This Court also has personal jurisdiction over the Defendants with respect to any issue or claim raised on this action

because its principal place of business is in New York and it regularly transacts significant business within the state.

## STATEMENT OF THE MATTER

9. Ultria entered into the Master Agreement with the Times on November 22, 2019.  Under the Master Agreement, Ultria granted the Times and its affiliates a non-exclusive, non-transferrable, royalty-free, fully paid up, worldwide license to access and use Ultria Saas Software, along with the instructions, user manuals and other materials comprising "documentation" of the software. Ultria further agreed promptly to provide the Times with access to the software and documentation and to begin the immediate provisioning and reconfiguring of the software.

10. In consideration for the grant of the software license and related services, the Times agreed to pay annual subscription fees and tender other service-related payments for a minimum three-year subscription term.  The Master Agreement set forth a fixed annual subscription price of $140,000 for the initial three-year term, representing a bundled rate for the various components of service identified in Order No. 1 to the Master Agreement.

11. In addition to the license and implementation services, Ultria agreed to provide the Times with certain "Maintenance Services" as specified in Order No. 2 to the Master Agreement. Ultria's Maintenance Service obligations under the Master Agreement included providing a "support infrastructure", a web-

based Problem Resolution System or "PRS" and staffed Customer Support, among other things.

12. In compliance with the Master Agreement and in compliance with its contractual obligations thereunder, Ultria performed all contracted for services, including conducting a collaborative software implementation. The Times fully participated in the software implementation and Ultria completed the implementation to the satisfaction of the Times' representatives.

13. The three-year subscription term is critical to the financial structure and service pricing of the Master Agreement. Order No. 1 of the Master Agreement provides expressly that pricing under the contract, including the $140,000 annual subscription, was based on a three year licensing commitment by the Times.

14. Paragraph 15 of the Master Agreement ("Term and Termination") provides unambiguously that during the initial twelve months of the three year subscription period the parties could terminate the Master Agreement only in the event the other party is in default of its material obligations under the Contract, and the default is not remedied in ten days thereof.

15. On or around December 10, 2020, over a year into the contract and the parties' contractual relationship, the Times expressed dissatisfaction with the Saas System, refusing to pay invoices for fees due and owing under the Master Agreement,

4

including 50% of the first year license fee and 50% of the implementation fee, among other charges. The Times failed to provide Ultria with the required ninety (90) days written notice of alleged default as required under paragraph 15 of the master Agreement, nor did it provide Ultria with an opportunity to cure the alleged default, as further required under paragraph 15.

16.  Ultria responded in a December 23, 2020 letter from its General Counsel advising the Times that it had failed to pay $137,225 in fees owed for services for the first year of the Master Agreement, exclusive of fees the Times either owed or was contractually or legally obligated to pay going forward.  The letter nonetheless expressed Ultria's desire to resolve the matter amicably once the first year fees were paid.

17.  The Times responded in a January 12, 2021 letter from its Deputy General Counsel alleging for the first time certain problems with the fully implemented Saas software. Although the letter asserted vaguely that the software did not work, the alleged problems or deficiencies with the software amounted in reality to a lack of acute customization.  Such customization was not part of the Master Agreement and Ultria expressly disclosed within the Master Agreement it was not offering and would not be providing customized software and that the Saas software was "as is".

18.  Ultria explained its well-founded position in this respect in a February 8, 2021 letter from its General Counsel in

5

response. Therein, without compromising its legal right to seek full payment of all monies owed by the Times under the contract, Ultria advised the Times that it would accept $105,400 in payment to resolve the matter in order to avoid litigation against what it perceived to be a formidable adversary.

19. The Times responded in a February 22, 2021 letter rejecting the generous offer and demanding a substantial refund of monies already paid. The Times failed to explain much less substantiate the legal and factual basis for its demand and legal position. It is clear from the substance and tenure of the various communications from the Times concerning its default on the contract, that the Times was simply leveraging its stature and financial position to intimidate a contractual counterpart it perceived as unwilling or unable to stand up to it and vindicate its legal rights in a court of law.

20. The problems with the software alleged by the Times do not remotely constitute a default by Ultria on its material contractual obligations triggering the licensee's right of termination, as required under Paragraph 16 of the Master Agreement.

21. The pertinent default provision of Paragraph 16 relates solely to Ultria's performance of the implementation, hosting and other contractually provided-for services throughout the life of the contract.

22. The extraordinary right of termination cannot be invoked by the licensee merely based on any alleged dissatisfaction with the features and functional capabilities of the software, the nature of which were fully disclosed by Ultria both in the Master Agreement and during the implementation process.

23. A right of termination clearly does not arise based on a licensee's dissatisfaction with the software stemming merely from an alleged lack of acute customization, especially to allegedly particularized business needs the licensee failed to identify in the implementation process. Exhibit D of the Master Agreement states unambiguously that "[t]he software provided by Ultria is the same generic standard as is, SaaS model software" offered and provided to its other customers. It expressly states that "[a]ny new future requirement put forth by [the] licensee shall pass through Ultria's VOC process."

24. Exhibit D of the Master Agreement describes the VOC process in detail. It states that customized features are incorporated into to the generic software based upon the prioritized product enhancement requests of Ultria's entire customer base through a scoring process the provision describes in detail.

25. As with all other Ultria licensees, therefore, the Times was apprised through the unambiguous terms of the Master Agreement,

that it was receiving generic standard as opposed to customized software.

26. The Times was further apprised by the terms of the Master Agreement that any enhancements, whether or not related to the licensee's particularized needs, would only be added to the software based upon its demonstrated utility and value to other users.

27. It is thus clear from the record of the parties' commercial dealings, that the Times both examined and approved Ultria's SaaS model software, and that no misrepresentations of any kind were made as to the features, functionality, capability or any other aspect of the software.

## COUNT ONE

### BREACH OF CONTRACT

28. Ultria repeats and realleges the foregoing paragraphs as if fully set forth herein.

29. Ultria duly performed its contractual duties and obligations under the Master Agreement.

30. Ultria completed an extended and collaborative software implementation to the Times' satisfaction and performed other related services.

31. In consideration for those services, and the three-year license to use Ultria's Saas software, the Times agreed to pay

annual subscription fees and tender other service related payments for the full three-year subscription term.

32. The Times breached its obligations under the Master Agreement by wrongfully terminating the Agreement and failing to pay substantial fees due and owing as well as additional fees for ongoing services.

33. As a direct result of the Times wrongful breach of contract, Ultria has suffered damages and losses, including unpaid monies due and owing, lost revenues, and the lost investment of costs associated with the implementation and other related services.

WHEREFORE, Plaintiff demands compensatory, consequential, exemplary and punitive damages, attorney's fees and costs and such other relief as is in the interest of justice.

## COUNT TWO

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

34. Ultria repeats the foregoing paragraphs as if fully set forth herein.

35. The Times' wrongful actions in wrongfully terminating the Master Agreement, failing to honor its three-year subscription term, and failing to pay monies due and owing under the Master Agreement, constitute a breach of the implied covenant of good

faith and fair dealing inherent in all contracts under the common law of New York.

36.  As a direct result of said breach, Ultria has sustained the afore described damages and losses.

WHEREFORE, Plaintiff demands compensatory, consequential, exemplary and punitive damages, attorney's fees and costs and such other relief as is in the interest of justice.

## COUNT THREE

## QUANTUM MERUIT

37.  Ultria repeats the foregoing paragraphs as if fully set forth herein.

38.  Ultria is entitled to recover all fees and revenues owing under the Master Agreement under the doctrine of Quantum Meruit.

WHEREFORE, Plaintiff demands compensatory, consequential, exemplary and punitive damages, attorney's fees and costs and such other relief as in the interest of justice.

## COUNT FOUR

## PROMISSORY ESTOPPEL

39.  Ultria relied to its detriment on the Times' contractual promises and representations, including its commitment to the three-year subscription term of the Master Agreement.

10

40. As a direct result of Ultria's detrimental reliance on the Times' contractual promises, representations and commitments, Ultria has sustained damages and losses.

41. Ultria is entitled to recovery for those damages and losses under the doctrine of promissory estoppel.

WHEREFORE, Plaintiff demands compensatory, consequential, exemplary and punitive damages, attorney's fees and costs and such other relief as is in the interest of justice.

## COUNT FIVE

## FRAUD

42. Ultria repeats and realleges the foregoing paragraphs as if fully set forth herein.

43. The Times' conduct in wrongfully terminating the Master Agreement and refusing to pay monies due and owing under the contract also constitutes fraud under the common law of New York.

44. The Times fraudulently induced Ultria to enter into the Master Agreement by approaching the Agreement and its commercial dealings with Ultria in bad faith without any intention of fulfilling its contractual obligations under the Master Agreement.

45. The Times' wrongful termination of the Master Agreement for unsubstantiated, manufactured and wholly pre-textual reasons also constitutes common law fraud.

46. As a direct result of the Times' fraudulent conduct, Ultria has sustained damages and losses.

47. Ultria is entitled to recover for its damages and losses, and to recover exemplary and/or punitive damages and attorney's fees and costs under New Jersey common law.

WHEREFORE, Plaintiff demands compensatory, consequential, exemplary and punitive damages as well as attorney's fees and costs.

                                              HEROLD LAW, P.A.
                                              Attorneys for Claimant

Dated: June 23, 2021                  By: */s/ Michael J. Faul*
                                                  Michael J. Faul
                                              Robert J. Donaher, Esq.